**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **RICHARD LENARD,** | **CASE NO. 1:17 CV 440** |
| Plaintiff, | **JUDGE CHRISTOPHER A. BOYKO** |
| v. | |
| | **OPINION AND ORDER** |
| **CITY OF CLEVELAND,** *et al.*, | |
| Defendants. | |

**CHRISTOPHER A. BOYKO, J.:**

*Pro se* Plaintiff Richard Lenard filed this action under 42 U.S.C. § 1983 against the City of Cleveland, the Cuyahoga County Prosecutor's Office, the Cuyahoga County Sheriff's Department and the Cuyahoga County Jail. In the Complaint, Plaintiff alleges he has been held in the Cuyahoga County Jail on a heightened security floor without telephone and mail privileges and without proper nutrition. He asserts claims for negligence, malicious prosecution, intentional infliction of emotional distress, dereliction of duty and conversion. He seeks monetary and injunctive relief.

## I. BACKGROUND

Plaintiff was charged in five separate indictments in 2015 and 2016. *See State of Ohio v. Lenard*, Nos. CR-15-602274, CR 15-599742, CR-15-602350, CR-15-597800, and CR-16-

602457 (Cuyahoga Cty Ct. Comm. Pleas). In Case Nos. CR-15-602274 and CR-15-602350, he was charged with Attempted Murder, four counts of Felonious Assault, two counts of Aggravated Robbery, three counts of Kidnaping, two counts of Disrupting Public Services and two counts of Criminal Damaging. In the remaining criminal cases, Plaintiff was charged with two counts of Securing Records by Deception, Identity Fraud, two counts of Tampering with Records, Aggravated Theft, Forging Identification Cards and two counts of Grand Theft. Bond was set in each of these criminal cases. He remained in the Cuyahoga County Jail unable to post the aggregate total bond of $1,400,000.00.

Cuyahoga County Common Pleas Court Judge Maureen Clancy issued a pretrial order barring Plaintiff from having any contact with the victim in Case Nos. CR-15-602274 and CR-15-602350. These cases resulted from incidents of domestic violence that occurred on November 21, 2015 and October 7, 2015. On both dates, Plaintiff physically assaulted Kassandra Anne Hankins by repeatedly punching her, slamming her into the ground, stomping her, dragging her up and down stairs, kicking her and strangling her. When she began to bleed during the incident on November 21, 2015, Plaintiff stopped to put on latex gloves to keep from getting blood on himself. During the October incident, Hankins grabbed a knife to defend herself. Plaintiff took the knife from her and used it to cut her hair off. Despite the no contact order, Plaintiff called Hankins seventy-six times from December 21, 2015 to January 20, 2016, sometimes using the pin numbers of other inmates to get the call through. He also mailed letters to her. In these conversations, he told Hankins what she had to do to drop the charges against him and instructed her on how to answer questions posed to her by prosecutors. Because

Plaintiff continually violated the no contact order, his telephone and mail privileges were suspended and he was placed in a more secure area of the jail.

Plaintiff complains that while he was in segregation, he was not fed nutritious meals, was denied two hours of exercise a week, was denied participation in group religious services and was permitted to leave his cell only to shower. Even after he was moved from segregation, he was housed on a more restrictive floor and was prohibited from having telephone or mail privileges.

Plaintiff asserts four Counts for relief. In Count One, he contends the Defendants were negligent and denied him access to the courts when they failed to allow him to use the telephone to call his attorney or family, violated his First Amendment right to practice his religion, exposed him to cruel and unusual punishment by denying him two hours of exercise each week and denied him due process before confining him to a higher security floor of the jail. In Count Two, he contends the Defendants engaged in malicious prosecution and intentionally inflicted emotional distress. In Count Three, Plaintiff lists claims for conversion and negligence when they deprived him of real property in Garfield Heights, Ohio by incarcerating him and making it difficult for him to pay his mortgage. He also claims his collective bail is excessive. Finally, he claims in Count Four that the Defendants engaged in malicious prosecution and were negligent when they seized, opened and read a letter he had in his possession and used it as evidence against him when he was indicted by the grand jury. He also contends they failed to take proper care to treat him for lead poisoning or treat the water supply in the jail for lead. Plaintiff asks the Court to award him $ 12,000,000.00 in damages and issue injunctive relief.

## II.  LAW AND ANALYSIS

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when the Defendant is immune from suit or when the Plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true.  *Bell Atl. Corp.*, 550 U.S. at 555.  The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.  *Id.*  In reviewing a Complaint, the Court must construe the

pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**City of Cleveland**

As an initial matter, Plaintiff does not allege any wrong-doing by the City of Cleveland, or any of its employees. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). It is unclear from the Complaint how the City of Cleveland was involved in the events Plaintiff describes. He failed to state a claim against this Defendant.

**Cuyahoga County**

Furthermore, the Cuyahoga County Prosecutor's Office, Sheriff's Office and Jail Corrections Center are not proper Defendants. They are not *sui juris*, meaning they are not independent legal entities capable of suing or being sued. They are merely subunits of Cuyahoga County. *See Batchik v. Summit County Sheriff's Dept.*, No. 13783, 1989 WL 26084 (Ohio Ct. App. Mar. 15, 1989); *Barrett v. Wallace*, 107 F.Supp.2d 949, 954 (S.D. Ohio 2000) (under Ohio law, a county sheriff's office is not a legal entity capable of being sued); *Johari v. City of Columbus Police Dept.*, 186 F.Supp.2d 821, 825 (S.D. Ohio 2002) (holding that the police department lacks capacity to be sued because "the Division of Police is an administrative vehicle by which the city operates and performs its functions."). Claims asserted against them are construed against Cuyahoga County.

Section 1983 does not permit a Plaintiff to sue a local government entity on the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978). A Plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing. *Id*. A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Id*. In addition, "there must be a direct causal link between the policy and the alleged constitutional violation such that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Id*.

Here, Plaintiff does not identify a particular policy of Cuyahoga County that the Defendants were following, nor does he connect that policy to the violations he alleges. In fact, Plaintiff's placement in segregation was the direct result of Plaintiff's repeated violation of the trial court's no contact order. His claims against Cuyahoga County are dismissed.

**Claims Against Unnamed Individual Defendants**

To the extent Plaintiff was attempting to assert his claims against unnamed individual Defendants by suing the entire department, he failed to state a claim. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Generalized allegations against an entire department are not sufficient to hold any individual within that department personally liable for damages.

**Prosecutorial Immunity**

Furthermore, even if Plaintiff had named individual prosecutors as Defendants, he still could not proceed with his claims against them. Prosecutors are also entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the attribution of improper and malicious actions to the State's advocate. *Imbler*, 424 U.S. at 424-25; *Skinner*, 463 F.3d at 525. Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Imbler*, 424 U.S. at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). In this instance, Plaintiff's claims against the Cuyahoga County Prosecutors are all based on their decision to prosecute him and their actions in connection with his prosecution. Consequently, any individual prosecutors would be entitled to absolute immunity from liability in this case.

**Claims Challenging His Conviction**

Moreover, Plaintiff asserts claims pertaining to telephone access to his attorney and malicious prosecution, which, if found to have merit, could imply the invalidity of his criminal convictions. In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 Plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Therefore, when a state prisoner seeks damages in a § 1983 suit, the Court must consider whether a judgment in favor of the Plaintiff would necessarily imply the invalidity of his conviction or sentence. If it would, as in this case, the claims must be dismissed unless the Plaintiff can demonstrate that the conviction or sentence has already been invalidated. Plaintiff gives no indication that his convictions have been reversed or set aside. Consequently, he cannot proceed with these claims.

**Excessive Bail**

Plaintiff claims the collective amount of bail set in each of his criminal cases is excessive in violation of the Eighth Amendment. Even if individual County Prosecutors, Sheriff's Deputies, or Jail Officials were named as Defendants, this claim could not proceed against any of them. The Common Pleas Court Judge presiding over the case ultimately determines bail amounts, not the Prosecutors, Sheriff's Deputies or Jail Officials. *See Marsh v.*

*Randolph*, No. 1:09–cv–13, 2012 WL 397778, * 6 (E.D. Tenn. Feb.7, 2012) (noting that an prosecutor's request that the Plaintiff's bond be set at $1,000,000 did not amount to a constitutional violation because the judge, not the prosecutor, imposed the Plaintiff's bond); *Ghaith v. Rauschenberger*, No. 11-1780, 493 Fed. Appx. 731, 739-40 (6th Cir. Aug. 4, 2012) (affirming district court's dismissal of the Plaintiff's Eighth Amendment excessive bail claim where none of the defendant police officers and prosecutors were directly involved in the state court's decision to impose the bond at issue).

Furthermore, this Court cannot act through a civil rights action to order a state court to reduce Plaintiff's bail in pending state court pending criminal proceedings. *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971). When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state Defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present. Several of Plaintiff's criminal cases are still pending. State court criminal matters are of paramount state interest. *See Younger*, 401 U.S. at 44-45. The third requirement of *Younger* is that Plaintiff must have an opportunity to assert his federal challenges in the state court proceeding. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). The burden at this point rests on the Plaintiff to demonstrate that state procedural law bars presentation of his claims. *Pennzoil Co.*, 481 U.S. at 14. When a Plaintiff has not attempted to present his federal claims in the state court proceedings, the federal court should assume that state procedures will afford an adequate remedy in the absence of "unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15. Here, there has been no showing that Plaintiff could not attempt to get his bail reduced in the state courts. The requirements of *Younger* are satisfied and this Court must abstain from interfering in any pending state court criminal action against the Plaintiff.

**Religion Claims**

Plaintiff also includes general, unexplained claims for denial of the practice of his religion and denial of exercise. He does not identify his religion or allege facts suggesting how he was prevented from engaging in its practice. He indicates he was denied two hours of outdoor exercise per week but does not allege any other facts suggesting he was denied all types of physical activity or the length of time these restrictions were in place. These claims are stated solely as legal conclusions without supporting facts. Legal conclusions alone are not sufficient to present a valid claim. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987);

*see also Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971) (conclusory section 1983 claim dismissed).

**Security Classification**

Plaintiff contends he was denied due process when he was housed in a higher security floor of the jail. Notably, this move occurred after he was found to have violated the court's no contact order on multiple occasions, sometimes using the credentials of other inmates to avoid detection. Plaintiff has no constitutional right to be held in a particular part of the jail, or to be held under a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997).

**State Law Claims**

Finally, Plaintiff's claims for negligence, conversion and intentional infliction of emotional distress arise, if at all, under state tort law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* Having dismissed plaintiff's federal law claims, this court declines jurisdiction to hear plaintiff's state law claims.

### III. CONCLUSION

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED: June 30, 2017